**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JAMES D. BUCHANAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-171-RAW |
| | ) | |
| (1) TURN KEY HEALTH CLINICS, LLC, | ) | JURY TRIAL DEMANDED |
| (2) ROB FRAZIER, in his official capacity as | ) | |
| Muskogee County Sheriff, | ) | |
| (3) BOARD OF COUNTY COMISSIONERS | ) | |
| OF MUSKOGEE COUNTY, OKLAHOMA, | ) | |
| (4) DR. COOPER, and | ) | |
| (5) KATIE MCCULLAR, LPN | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT, ROB FRAZIER, IN HIS OFFICIAL CAPACITY AS MUSKOGEE
COUNTY SHERIFF'S TRIAL BRIEF**

---

Respectfully submitted,

s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
Andy A. Artus, OBA No. 16169
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK  73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
Email: aaa@czwlaw.com
            jlm@czwlaw.com

*Attorneys for Defendant, Sheriff Rob Frazier*

October 17, 2019

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

LIST OF ATTACHMENTS ......................................................................................................... iv

I.      CLAIMS AT ISSUE IN CASE ................................................................................2

A.      INDIVIDUAL VIOLATION ........................................................................ 2-9

B.      OFFICIAL CAPACITY LIABILITY ........................................................ 9-16

II.     SPOLIATION .........................................................................................................16

III.    MOTIONS IN LIMINE ................................................................................... 16-17

IV.     DAMAGES, JURY VERDICTS, AND OTHER
        MISCELLANEOUS INSTRUCTIONS ............................................................ 17-18

V.      CONCLUSION ........................................................................................................18

CERTIFICATE OF SERVICE ....................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397
117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ............................................................... 3
*Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990) ............................... 4
*Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520
U.S. 397 (1997) ............................................................................................. 10, 11
*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, (10th Cir. 2010) .................... 11
*Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019) ............................................................... passim
*Carter v. Morris*, 164 F.3d 215, (4th Cir. 1999) ............................................................... 11
*Cf Connick v. Thompson*, 131 S. Ct. 1350, 179 L.Ed.2d 417 (2011) .......................................... 14
*Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) ..................................................... 11
*City of Canton v. Harris*, 489 U.S. 378 and n. 7 (1989) ............................................................... 4
*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ............................................................... 3
*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) .......... 10
*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................................... 3
*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) .......................... 3, 4
*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993) ..................................................... 2, 10
*Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999) ............................................................... 4, 5
*Lankford v. City of Hobart*, 73 F.3d 283 (10th Cir. 1996) ..................................................... 11
*Livsey v. Salt Lake County*, 275 F.3d 952 (10th Circ. 2001) ..................................................... 3
*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) ............................................................... 11
*Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005) ............................................................................... 3
*Monell v. New York City Dept. of Social Services*, 436 U.S. 658,
98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ............................................................................... 10
*Pembaur v. Cincinnati*, 475 U.S. 469, 106 S. Ct. 1291, 89 L. Ed. 2d 425 (1986) .................... 10
*Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004) ............................................................... 5
*Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) ..................................................... 3
*Whitley v. Albers*, 475 U.S. 312, 319 (1986) ............................................................................... 3

**Federal Statutes**

42 U.S.C. § 1983 .......................................................................................................... passism

**LIST OF ATTACHMENTS**

Exhibit 1: Defendant's proposed jury instructions

Exhibit 2: Plaintiff's disputed proposed jury instructions

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JAMES D. BUCHANAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-171-RAW |
| | ) | |
| (1) TURN KEY HEALTH CLINICS, LLC, | ) | JURY TRIAL DEMANDED |
| (2) ROB FRAZIER, in his official capacity as | ) | |
| Muskogee County Sheriff, | ) | |
| (3) BOARD OF COUNTY COMISSIONERS | ) | |
| OF MUSKOGEE COUNTY, OKLAHOMA, | ) | |
| (4) DR. COOPER, and | ) | |
| (5) KATIE MCCULLAR, LPN | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANT ROB FRAZIER, IN HIS OFFICIAL CAPACITY
AS MUSKOGEE COUNTY SHERIFF'S, TRIAL BRIEF**</u>

Defendant Rob Frazier, in his official capacity as Muskogee County Sheriff ("Frazier"), hereby submits his Trial Brief in the above-referenced case.

Defendant Frazier filed a Motion for Summary Judgment on September 4, 2019. As of the date of this filing, this Court has not yet ruled on the Motion for Summary Judgment (Dkt. 134), and thus it is not clear if Defendant Frazier will actually be involved in a trial in this matter. However, to the extent this Court denies Defendant Frazier's Motion for Summary Judgment, there would be only one claim against Defendant Frazier at trial: namely a claim brought pursuant to 42 U.S.C. § 1983 for municipal liability based on the medical care that Plaintiff James Buchanan received while housed at the Muskogee County Detention Center from November 3, 2016 through November 14, 2016.

In essence, Plaintiff claims that while he was an inmate at the Muskogee County Jail, he developed a cervical epidural abscess, which led to temporary paralysis. Plaintiff will likely

claim that he complained about his condition to various jail staff-members and Turn Key Health Clinics, LLC nurses during his time at the facility, but that he was not transported to the hospital until November 14, 2016.

## I.      CLAIMS AT ISSUE IN CASE

As laid out extensively in the Motion for Summary Judgment, Plaintiff will be unable to establish liability against Defendant Frazier, in his official capacity.   Defendant Frazier has submitted Proposed Jury Instructions (See attached Exhibit 1)[1] to accurately explain to the jury the standards in this case.  After some basic jury instructions (some agreed to, and some not), Defendant Frazier's Proposed Instruction No. 18 accurately lays out who the parties are in this case.  Defendant Frazier's Proposed Instruction No. 19 lays out a statement of the case, explaining precisely what the claims and defenses are.  This instruction should be entered instead of the "Statement of the Case" instruction on p. 3 of Plaintiff's Proposed Disputed Instructions, which does not lay out as clearly and accurately what the claims and defenses are in this case.  Defendant Frazier's Proposed Instructions No. 18 and 19 both be entered, to clarify to the jury who precisely are the parties in this case, and what the claims are.

### A.      INDIVIDUAL VIOLATION

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for violations of the United States Constitution by Defendant Frazier, in his official capacity.   The lack of a constitutional violation by the officers of a municipality negates a finding of liability against the municipality itself. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). This is so "regardless of whether the municipality's policies might have 'authorized' such harm." *Id.* (citing *City of Los*

---

[1] Plaintiff's Disputed Proposed Jury Instructions are attached as Exhibit 2. The parties will also submit agreed jury instructions.

*Angeles v. Heller*, 475 U.S. 796, 799 (1986)). *See also Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) (holding that a plaintiff suing a county under § 1983 must demonstrate that a municipal employee committed a constitutional violation); *Livsey v. Salt Lake County*, 275 F.3d 952, 958 (10th Circ. 2001) (county employees did not violate constitutional rights and thus could not have cause the county to be held liable based on their actions). Here, first and foremost, Plaintiff cannot show that any individual members of the jail staff acted with deliberate indifference toward Plaintiff's medical needs. As such, no constitutional violation occurred, and Plaintiff will be unable to recover against Defendant Frazier at trial.

Deliberate indifference is a very high standard to meet, one which requires proof that an actor disregarded a "known or obvious consequence of his action" as it relates to providing medical care. *Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410 (1997). "It is obduracy and wantonness, not inadvertence or error in good faith" that violates the Constitution with regard to meeting medical needs. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the U.S. Supreme Court held that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment, and such a constitutional violation is actionable under § 1983. *Estelle* at 104.

To establish deliberate indifference to serious medical needs that rises to the level of cruel and unusual punishment, a plaintiff must satisfy both the objective and subjective elements of the test for deliberate indifference. *Mata v. Saiz*, 427 F.3d 745, 752-753 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The second element that Plaintiff must prove to satisfy the deliberate indifference test is the subjective element, which at trial, Plaintiff will be unable to show was met here.  To meet that burden,

3

Plaintiff must show that an individual agent of Defendant Frazier in his official capacity acted with a "sufficiently culpable state of mind," in a manner so egregious that it amounts to "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer* at 834. Mere negligence, even gross negligence, is insufficient to meet this standard. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 and n. 7 (1989)). In other words, to meet the subjective element, Plaintiff must demonstrate that a specific employee of the Jail was aware of a known or obvious risk that Plaintiff was at substantial risk of serious harm, and did not act to mitigate that risk. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Collective liability is insufficient; one or more specific employees of the Sheriff's Office must have acted with deliberate indifference. *See Burke v. Regalado*, 935 F.3d 960, 1009-1011 (10th Cir. 2019). Plaintiff cannot show this at trial; there will simply not be any evidence that any particular individual MCDC employee was deliberately indifferent to Plaintiff's medical needs

It is important to note that Sheriff Frazier in his official capacity can only potentially be held responsible for deliberate indifference by subordinates of the Muskogee County Sheriff's Office, not Turn Key staff. The Tenth Circuit recently clarified the standard for when an employee is a subordinate, stating:

> Under the contract between TCSO and CHC, "TCSO is charged with the responsibility for administering, managing[,] and supervising the health care delivery system" at the jail. App. at 11824. CHC providers worked at the jail only with TCSO's permission, and TCSO sometimes revoked this permission for policy violations. Moreover, TCSO (1) could require CHC to terminate medical providers; (2) "own[ed] and retain[ed] custody and control of all medical records," *id.* at 11828; (3) allocated space for CHC medical providers to work; and (4) provided equipment to CHC staff. *See Burke, supra,* at 997.
>
> Here, unlike in *Burke, supra*, the evidence at trial will show Turn Key Staff were

4

obviously not subordinates of the Muskogee County Sheriff. The Muskogee County Jail had no control over Turn Key's staffing decisions, as Turn Key Staff were employees/agents of Turn Key, not Muskogee County. Moreover, Turn Key kept medical records of the inmates of its own, separate from the Jail's own files on the inmates. Further, under the terms of the Contract with Turn Key, Turn Key was responsible for medical care of all inmates in the facility. Most importantly, under the terms of the Contract with Turn Key, Turn Key is an independent contractor, and not an agent of the County. The situation here is directly inapposite to the situation in *Burke, supra*, and Turn Key staff were NOT subordinates of the Muskogee County Sheriff.

Thus, Plaintiff must establish that an individual who actually was a subordinate of the Muskogee County Sheriff was deliberately indifferent. Plaintiff will not be able to do this. In fact, it is still not clear who Plaintiff is claiming the detention staff member is that allegedly violated his rights. In fact, Plaintiff cannot even name any staff at the Jail at all.

Certainly, Plaintiff will not be able to establish at trial that any particular employee of the Muskogee County Jail was aware of a known or obvious risk that Plaintiff was at substantial risk of serious harm, and did not act to mitigate that risk. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). In the absence of a reason to believe that medical personnel were mistreating or not treating the prisoner, non-medical prison personnel cannot be held liable for deliberate indifference to a prisoner's serious medical needs if the prisoner is under the care of prison medical personnel. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).

Here, the evidence at trial will show that Plaintiff was seen by medical personnel on at least 22 occasions. He received a medical screening from a qualified nurse. He received Naproxen 19 times, every morning and every night (with one exception), which was prescribed by a qualified physician, and passed to him directly by a qualified nurse, who placed it in his

mouth and had the opportunity to see him. He was seen again by a qualified by nurse on November 11, 2016, and was placed on the sick call list to see Dr. Cooper. No member of the nursing staff ever thought that Plaintiff was in an emergency situation, until the evening of November 14, 2016. Even when he was examined by Turn Key LPN Katie McCullar on the morning of November 14, 2016, she did not think it was an emergency situation. Jail staff had no reason to believe that Turn Key nursing staff were providing Plaintiff with improper or substandard care.   Jail staff additionally did not prevent Turn Key from providing Plaintiff with medical care. Jail staff were entitled to send inmates to the emergency room via EMS if they thought it was obvious nursing staff were not providing appropriate medical care in an emergency situation, but here, no such thing was obvious. Rather, only after Plaintiff intentionally urinated on himself, and LPN Nurse Rosemary Kotas performed vitals, did it become apparent that Plaintiff was in an emergency situation.

The Turn Key LPN's had more medical training than any of the jailers on staff at the Muskogee County Jail (including training on what is and what is not an emergency), and the jailers were entitled to rely on the nurses' medical opinions that it was not an emergency, and that he should be seen on November 15th by Dr. Cooper. In fact, Plaintiff's brother additionally did not seem to think that Plaintiff was in an emergency situation, as even after seeing and talking to him on the 11th (where Plaintiff spent much of the conversation talking about his bicycle and his plants), his brother did not do anything to help Plaintiff, or say anything to jail personnel.

Even on November 14, the Turn Key nurses had not been able to correctly diagnose Plaintiff's cervical epidural abscess, which is an uncommon condition that is not one of the first things that springs to mind upon seeing a decreased range of motion. They were not alone:  the medical personnel at St. John's had not diagnosed it either, even though the underlying infection

had already started.   Nevertheless, the Turn Key nurses recognized an emergency situation when it in fact developed, as he was transferred to the hospital on November 14. He was then transferred to Hillcrest Medical Center on November 15, who waited another day until November 16 to perform surgery within the 24-72 hour window to prevent complete paralysis and allow Plaintiff to recover. Thankfully, Plaintiff recovered, and is now able to care for himself, including walking, going up steps, bathing himself, going to the bathroom on his own, cooking and cleaning for himself, and even riding a bicycle.

At trial, Plaintiff will essentially argue that some unnamed and unknown jailer violated his rights by denying him medical care, even though Plaintiff was seen by well-trained medical personnel TWENTY-TWO times, and no medical personnel ever considered it to be an emergency until the evening of November 14, when he was promptly and appropriately taken to the hospital.   There is no evidence in this case whatsoever that Muskogee County Jail personnel prevented Plaintiff from receiving medical care, and certainly no evidence that any particular subordinate of the Muskogee County Sheriff was deliberately indifferent.   Even Plaintiff cannot name the individual who supposedly violated his rights.   There is no underlying violation of Plaintiff's constitutional rights by a Muskogee County Sheriff's Office employee, and for this original and primary reason, Defendant Sheriff Frazier should prevail at trial.

Defendant Frazier has submitted proposed Jury Instructions to accurately explain to the jury the standards describe above, based on current and accurate law in this circuit.   Defendant Frazier's Proposed Instruction No. 21 accurately explains to the jury how 42 U .S.C. § 1983 is simply a statute that allows prospective Plaintiffs to enforce rights guaranteed to them by the Constitution.   Defendant Frazier's Proposed Instruction No. 22 explains to the jury what "under color of law" means, and explains the distinction between acting under color of law, and being

7

liable for an act.  Defendant Frazier's Proposed Instruction No. 23 describes to the jury which particular constitutional rights are at issue here in this lawsuit.  Defendant Frazier's Proposed Instruction No. 24 explains how there must first be an underlying constitutional violation by an employee or agent of Defendant Frazier, in particular, in order to hold Defendant Frazier liable. Defendant Frazier's Proposed Instruction No. 25 then accurately and completely explains what precisely Plaintiff has to prove to establish deliberate indifference against a particular employee or agent of Defendant Frazier.  All of these Instructions should be read to the jury, so that they understand the concepts described above.

In contrast, several of Plaintiff's Proposed Disputed Jury Instructions should not be entered.  Plaintiff's 42 U.S.C. § 1983 instruction, at p. 6, should not be entered, as it unnecessarily again addresses the claims at issue in this lawsuit, and inaccurately portrays Turn Key Health Clinics staff as "subordinates" of the Sheriff's Office.  For all the reasons described above, this is not accurate, and is highly misleading.

Plaintiff's "Action Under Color of State Law," at p. 7 should not be entered, as it is not as simple or clear as Defendant's similar instruction.  Moreover, it harps on whether or not Turn Key was acting under color of state law, which is irrelevant to the claims against Defendant Frazier.

Plaintiff's "Constitutional Deprivation-General" Instruction at p. 8 should not be entered as it references numerous issues that are not relevant to this case, like food, water, clothing, sanitation, etc.  Moreover, it inaccurately states the standard by which Plaintiff must establish a constitutional violation against Defendant Frazier, implying that a mere delay in treatment is a violation of the Constitution.   This is not the law, and Plaintiff's instruction in this regard should not be read to the jury.

Plaintiff's "Underlying Constitutional Violation-Generally" Instruction at p. 9 should additionally not be entered.   The instruction inaccurately implies that Turn Key staff are subordinates of Sheriff Frazier, even where that is not the law in the 10th circuit under the circumstances at issue here.   The instruction does not make clear that Plaintiff must establish a specific underlying violation by an individual agent or employee of the Sheriff's Office, in particular, so the instruction is misleading, inaccurate, and should not be read to the jury.

Plaintiff's "Underlying Violation of the Constitution-Deliberate Indifferent to Serious Medical Needs" Instruction at pp. 10-11 should additionally not be read to the jury, as it significantly underplays and misstates the "Deliberate Indifference" standard, as the Tenth Circuit has applied it.   Defendant Frazier's Instructions should be used instead.

Plaintiff's "Underlying Violation of the Constitution-Combined Acts" instruction at p. 13 also directly contravenes recent 10th circuit precedent, which shows that collective liability is insufficient; one or more specific employees of the Sheriff's Office must have acted with deliberate indifference for there to be a finding of an individual violation that could potentially allow liability for the Sheriff's Office.   *See Burke, supra, at* 997, 1009-111   Plaintiff's Instruction in this regard is based on outdated and incorrect precedent, and obviously should not be read to the jury.

### B.      OFFICIAL CAPACITY LIABILITY

Here, there is no allegation or evidence that former Sheriff Pearson personally participated in the alleged violations of Plaintiff's constitutional rights.   As such, Plaintiff's § 1983 claim against Defendant Frazier in his official capacity must be premised on the existence of some policy, practice, or custom of the MCDC.

Defendant Frazier cannot be held liable under § 1983 based upon the doctrine of

*respondeat superior* or vicarious liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   In *Monell*, the Supreme Court held that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs. *Id*. at 694.   The actions of the governmental entity must be the moving force behind the constitutional violation. *Id*. The Supreme Court has held that governmental liability for a constitutional violation "attaches where - and only where - the entity makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1291, 89 L. Ed. 2d 425 (1986).

Defendant Frazier may not be held liable simply because he "employs a tortfeasor." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).   Additionally, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Id.* at 406-07.   Rather, *Monell* requires Plaintiff to establish that a policy or custom of the MCDC exists and that it caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); *see also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (plaintiff must show that there is a direct causal link between the policy or custom and the injury alleged).

Furthermore, it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. *Brown*, 520 U.S. at 408.   The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the "*moving force*" behind the injury alleged.   *Id*. (emphasis added).   Furthermore, "[w]here a plaintiff claims that the municipality

has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id*. at 405.

In sum, Plaintiff cannot show that a policy, practice, or custom of the MCDC existed which caused any alleged violation of his constitutional rights.

> Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citations and internal quotation marks omitted).

In order for a municipality to be held liable for an un-official practice under § 1983, the practice must be "so permanent and well settled as to constitute a custom or usage with the force of law...In order to establish a custom, the actions must be persistent and widespread ... practices of [city] officials." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal citations and quotation marks omitted).    In determining what level of persistent and widespread conduct will be sufficient to establish municipal liability, it is clear that "normally random acts" and "isolated incidents" fall short.   *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).   *See also Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999) (a "meager history of isolated incidents" is insufficient).   Furthermore, the court in *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003), required evidence of "'numerous particular instances' of unconstitutional conduct."

However, Plaintiff will not be able to demonstrate at trial that the alleged violations of his constitutional rights were caused by any policy, practice or custom of the MCDC.   To the

contrary, the MCDC had implemented policies and practices aimed at preventing the denial or delay of medical care to MCDC inmates.

Again, the Muskogee County Detention Center ("MCDC") had a policy to provide adequate health care services, including complete emergency medical, dental, and mental health care, to all inmates regardless of their financial status. The policy provided that outside medical resources and specialized treatment was available, including access to adequately equipped and licensed hospital emergency rooms and other appropriate health facilities in the community. The MCDC also had policies to provide inmates with access to routine and emergency medical care. The policies additionally provided a "Sick Call" procedure by which inmates could request routine medical care, and provided for a medical clinic twice a week at the facility by licensed medical personnel to see inmates requesting care through the "Sick Call" procedure. The policies further provided that medical staff would be on duty at the facility 24 hours a day, and inmates would have access to emergency medical care for acute illnesses and unexpected health care needs which could not be deferred until the next scheduled sick call. The policies also provided for in-cell care for illness or diagnosis requiring bed rest or limited observation or management, but not requiring hospital admission. The policies further provided for access to outside medical specialists where medically necessary.

Moreover, the MCDC had a policy requiring the administration of inmate prescription medication in compliance with the orders of a licensed physician or designated medical authority. It was the policy and custom at the MCDC to provide inmates medical care, and to contact Turn Key medical if a jailer thought that an inmate needed medical care. It would be against policy and custom to ignore an inmate's medical needs, or to deny an inmate medical care. It was additionally the policy of the MCDC to provide adequate healthcare services, including complete

emergency, medical, dental and mental healthcare to all inmates in the jail regardless of their financial status. It was additionally the policy of the MCDC to provide inmates with medical and healthcare that met standards. Finally, it was the policy of the MCDC to send inmates to the emergency room in emergency situations. If healthcare was provided that did not meet standards (including any failure to send inmates to the emergency room in an emergency situation), this would be a violation of policy.

At trial, the evidence will show that the Muskogee County Detention Center went above and beyond the requirements to ensure that adequate and appropriate medical care was provide to its inmates.  There is no requirement in Oklahoma that County Jails have Licensed Practical Nurses (LPN's) on-site at all, and no requirement that County Jails have on-site medical staff 24/7. Nevertheless, the Muskogee County Jail, unlike the vast majority of County Jails, had, via Turnkey, LPN's on-site 24/7, as well as an Advanced Registered Nurse Practitioner or Doctor at the site twice per week, and a medical provider (Dr. Cooper) on call 24 hours per day.   In contracting with Turnkey, the MCDC picked a higher and more expensive option with 24-hour coverage to provide optimal medical care for inmates. Some county jails in Oklahoma do not have on-site medical staff at all, which is approved by the Oklahoma Department of Health. Additionally, there is no requirement in Oklahoma that County Jails have an LPN do an initial assessment.   Nevertheless, at the Muskogee County Jail, LPN's performed the initial assessments.

Clearly, the policies and practices of the MCDC did not cause the alleged violations of Plaintiff's constitutional rights.  To the contrary, any alleged deprivations of the Plaintiff's constitutional rights (such as failing to send Plaintiff to the hospital if there was a known emergency situation) would be in violation of the MCDC's policies.

Moreover, Plaintiff has no evidence of any persistent and widespread pattern of denial of medical care to MCDC inmates that would support a claim of an informal unconstitutional custom or practice. *Cf Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (holding that a pattern of similar constitutional violations is typically necessary to prove deliberate indifference). The 10th Circuit recently clarified what is necessary to show such a widespread pattern, which would require a documented history of a failure to follow recommendations into increased staffing, a documented lack of well-qualified or trained nurses, and a repeated failure to timely address medical issues. *See Burke, supra*, at 999-1000. None of these issues exist here. In addition, while Plaintiff cites *Burke* as an example of how overcrowding and understaffing could create such a custom or widespread pattern of denial of medical care, the 10th Circuit there actually ruled that to show such a widespread pattern, there would need to be a *documented history* of a failure to follow recommendations for increased staffing, a *documented lack of well-qualified or trained nurses*, and a *repeated* failure to timely address medical issues. *See Burke, supra*, at 999-1000. None of these issues existed here as of November 3-14, 2016.   To the contrary, the MCDC went above and beyond to have well-trained, qualified nurses on-site 24/7, far exceeding all requirements under Oklahoma law, and was doing everything possible to try to decrease the inmate population count at the Muskogee County Jail.   Additionally, there is no evidence at all that the Sheriff's Office *repeatedly* failed to timely address medical issues.   Defendant Frazier should therefore prevail on trial, as there is no municipal liability herein.

Defendant has submitted Jury Instructions that accurately recite and compile the law above, and will allow the Jury to understand the law on official capacity liability.   Defendant Frazier's Proposed Jury Instruction No. 26 accurately describes the requirements for finding

14

municipal liability case of this type.  Defendant Frazier's Proposed Jury Instruction No. 26 additionally succinctly and accurate defines customs and polices for the jury, so that they understand these concepts.  Defendant Frazier's Proposed Jury Instruction No. 30 helps the jury understand that a violation of state law, or of an internal Sheriff's Office policy, does not (in and of themselves) prove that federal constitutional rights are violated, as the standard is different. Defendant Frazier's Proposed Jury Instruction No. 32 also helps the jury understand the concept of proximate cause, and how the Sheriff's Office's policies, procedures, and customs must be the proximate cause of any injuries Plaintiff contends he suffered.   All of these accurate and helpful jury instructions should be entered.

In contrast, several of Plaintiff's Proposed Instructions should not be entered.  Plaintiff's "Official Capacity Liability-Muskogee County Sheriff" Instruction at pp. 14-15 of his Proposed Disputed Jury Instructions is highly inappropriate, creating causes of action based on alleged overcrowding and understaffing that are not supported by the evidence in the case or by the law. In fact, the criteria under the recent published *Burke* case makes quite clear that any alleged understaffing or overcrowding at the Muskogee County Jail is not sufficient to create official capacity liability under the circumstances that the evidence will show at trial.   Plaintiff's Instruction in this regard is not appropriate, and Defendant Frazier's Instructions No. 26 and 30 should be entered instead.

Moreover, Plaintiff's "State Law or Policy Violation" instruction at p. 12 is highly misleading and unhelpful to the jury.   It seems to suggest that a violation of one's own policies does impute a finding of deliberate indifference, even though that is not the law.   Moreover, it refers to the nurse as a "jail nurse" rather than a Turn Key nurse, which again attempts to blur the lines between Turn Key staff and MCDC staff.   Defendant's Instruction No. 31 should be issued

15

instead.

Additionally, Plaintiff's "Proximate Cause" instruction at p. 21 of his Proposed Disputed Jury Instructions should not be entered, as it ignores how the Sheriff's Office's policies, procedures, and customs, in particular, must be the proximate cause of any injuries Plaintiff contends he suffered, for there to be liability against Defendant Frazier[2].

## II.      SPOLIATION

Plaintiff's Proposed Disputed Instruction at p. 20, titled "Spoliation of Video Evidence" should not entered.   As laid out in the Response to the Motion or Sanctions (Dkt. 159), Defendant Frazier maintains that any loss of the video at issue in this case was unintentional, that Plaintiff cannot demonstrate a high degree of culpability, that the video evidence was not relevant, and that Plaintiff has not been materially prejudiced.   Thus, for all the reasons contained therein, a mandatory adverse instruction, such as the one presented at p. 20 of Plaintiff's Proposed Disputed Inst4uctions, is highly inappropriate.   No such instruction should be entered.   Even if this Court finds there to be spoliation, the sanction entered should be as minimal as possible, as there is no intentional, bad-faith act to punish here.

## III.      MOTIONS IN LIMINE

Defendant Frazier has submitted Motions in Limine at Dkt. 150 and 155, along with a Reply at Dkt. 188.   Plaintiff has submitted no Motions of Limine of his own.   Defendant Frazier respectfully requests that all of Defendant Frazier's Motions in Limine be granted for the reasons contained therein.

---

[2] Defendant Frazier has no position on Plaintiff's Proposed Instructions on pp. 16-19 of his Proposed Disputed Instructions, as they are specifically concern claims brought only against co-Defendants Turn Key Health Clinics, LLC, Dr. Cooper, and Katie McCullar.   Defendant Frazier has no position either way on whether these are appropriate instructions.

16

## IV.    DAMAGES, JURY VERDICTS, AND OTHER MISCELLANEOUS INSTRUCTIONS

Defendant Frazier's Proposed Jury Instructions No. 33 (Causation and Damages), 34 (Compensatory Damages), 35 (Speculative Damages) and 36 (Effect of Instructions as to Damages) should all be entered.   Instruction 33 helps the jury to understand which damages are actually caused by any alleged constitutional violation, while Instructions 34-35 help the jury to understand the difference between valid compensatory damages and invalid speculative damages. Instruction No. 36 also helps the jury to understand that the mere fact that the jury is being instructed on damages does not mean that damages are necessarily appropriate under the circumstances of the case.   Plaintiff's "Damages" and "Compensatory Damages" instructions at pp. 22-23 of his Proposed Disputed Jury Instructions are not as clear, concise, and informative as Defendant Frazier's Instructions in this regard, and should not be read to the jury. Defendant Frazier has no position on Plaintiff's "Punitive Damages" instruction at p. 24 of his Proposed Disputed Jury Instructions, as it is aimed specifically at co-Defendants, but not at Defendant Frazier.

As for verdict forms, Defendant's Verdict Forms 1-9 should all be read to the jury.   By providing each of these Verdict Forms to the jury, the jury will be able to clearly and unambiguously inform the Court which Defendants are liable, if any, and what damages are attributable to which Defendant.   These Verdict Forms allow the jury to be able to inform the Court precisely how much it believes each Defendant is liable for, without confusion or ambiguity.   Plaintiff does not provide a Verdict Form, for this Court to consider, so Defendant Frazier's Verdict Forms in Exhibit 2 should be used in this case.

Moreover, the "Evaluation of Witness Testimony" instruction on pp. 4-5 of Plaintiff's

Proposed Disputed Instruction should not be entered, as it singles out law enforcement and state officer witnesses, specifically informing the jury that their testimony need not be given special consideration.   This concept is a given, however, and suggests to the jury that they should in fact give law enforcement officers' testimony *less* consideration than other witnesses, as no such instruction is proposed for any other category of witness.   This instruction should not be entered.

Briefly, Defendant Frazier also notes that its Instruction No. 34, titled "Video Deposition Evidence" should be entered, as at least one witness, Ryan Hamil, is on active military service outside the country, and will be unable to present live at trial.   His video deposition was taken for this very reason while he was briefly in the country, and this Instruction helps the jury understand why it is appropriate to provide the testimony of Ryan Hamil via video deposition instead of live.

## V.   CONCLUSION

This Trial Brief addresses some issues that will likely come up at trial.   If any other issues arise, Defendant Frazier will be happy to further brief them for the court

Respectfully submitted,

s/ Jordan L. Miller
Jordan L. Miller, OBA No. 30892
Andy A. Artus, OBA No. 16169
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK   73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
Email: jlm@czwlaw.com
            aaa@czwlaw.com

*Attorney for Defendant Board of*
*Commissioners of Muskogee County,*
*Oklahoma and Sheriff Rob Frazier*

18

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen, via electronic mail at: danielsmolen@ssrok.com
Robert M. Blakemore, via electronic mail at: bobblakemore@ssrok.com
Bryon D. Helm, via electronic mail at: bryonhelm@ssrok.com
701 South Cincinnati Avenue
Tulsa, OK 74119

*Attorneys for Plaintiff*

Austin J. Young, via electronic mail at: ayoung@johnsonhanan.com
Sean P. Snider, via electronic mail at: ssnider@johnsonhanan.com
JOHNSON HANAN VOSLER
   HAWTHORNE AND SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114

*Attorneys for Turn Key Health*
*Clinics, Inc., Dr. Cooper and*
*Katie McCullar, LPN*

s/ Jordan L. Miller
Jordan L. Miller