## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JAMES D. BUCHANAN,

      *Plaintiff,*

  vs.

TURN KEY HEALTH CLINICS, LLC;
ANDY SIMMONS, in his official capacity as
Muskogee County Sheriff;  BOARD OF
COUNTY COMMISSIONERS OF
MUSKOGEE COUNTY;  DR. WILLIAM
COOPER; *and* KATIE MCCULLAR, LPN,

      *Defendants.*

Case No. 18-CV-00171-JFH

### MEMORANDUM AND ORDER

Plaintiff James Buchanan claims Defendants were deliberately indifferent to his serious medical needs during the twelve days he spent in the Muskogee County, Oklahoma, Jail.  In his Amended Complaint, Plaintiff brings claims against Muskogee County and its Sheriff, as well as Turn Key Health Clinics, LLC—a company that contracted with the Jail to provide medical services to inmates—and two of its staff, alleging they were deliberately indifferent to his serious medical needs because they did not detect his oncoming paralysis sooner or immediately send him to a hospital for emergency treatment when he notified Nurse Katie McCullar (LPN) of his paralysis on the morning of his twelfth day in the Jail.  Plaintiff asserts that he is permanently disabled because of these purported failures.

Before the Court are Motions for Summary Judgment filed by the Board of County Commissioners of Muskogee County, Muskogee County Sheriff Andy Simmons,[1] Turn Key Health Clinics, Dr. William Cooper, and Nurse McCullar.  For the reasons described herein, the Motions are granted.

## I.        Factual and Procedural Background

On September 16, 2016, Plaintiff was riding his bicycle when a vehicle struck him.  He suffered multiple injuries due to the accident and was taken to Eastar Health System, where doctors diagnosed him with facial abrasions and lacerations, tenderness in his ribs and back, and diminished breathing sounds.  A CT scan showed fractures in four ribs, a collapsed left lung, and an apparent hematoma along his spine.  The following day, Plaintiff was transferred to St. John's Medical Center and admitted to the intensive care unit, where doctors again diagnosed Plaintiff's hematoma.  St. John's Medical Center discharged Plaintiff from its care on September 30, 2016, but he returned on October 14, 2016, to be seen at the emergency department and complained of persistent neck pain.  The emergency department diagnosed Plaintiff as suffering from muscle spasms in his neck and prescribed methocarbamol and naproxen.

On October 21, 2016, Plaintiff saw a chiropractor and complained of intense and constant pain in his neck, shoulders, and arms.  Plaintiff went to the chiropractor four times over the next ten days, and the chiropractor each time ordered cold pack therapy and electrical stimulation.  During this period, Plaintiff also sought treatment from a doctor at Riverwest Medical Clinic, where he complained of constant neck pain and a tingling sensation in his left arm.  The doctor

---

[1]  At the time of briefing, the Muskogee County Sheriff was Rob Frazier.  Since that time, Frazier has filed a Notice of Substitution of a Party to the Proceedings naming Andy Simmons as Muskogee County Sheriff.  Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party and later proceedings should be in the substituted party's name.

diagnosed Plaintiff as having suffered an acute cervical and thoracic spine injury, a left shoulder injury, left rib fractures, and posttraumatic headaches resulting from the motor vehicle accident in September.  He recommended Plaintiff continue taking his prescribed medication and seeing the chiropractor, and he advised Plaintiff should return for a reevaluation in two weeks.

On November 3, 2016, before Plaintiff could return to his doctor, he was booked into the Muskogee County Jail.  During booking, Nurse Rosemary Kotas and Plaintiff completed a medical intake form indicating that he was taking anti-inflammatory medication, muscle relaxers, and pain medication as prescribed by Dr. Trinidad of the Riverwest Medical Center.  Plaintiff further indicated that he had broken ribs, a collapsed lung, burnt fingers, and "neck problems" following his motor vehicle accident.

The following day, Nurse Delena Ayers contacted Dr. William Cooper, who prescribed 500mg of naproxen twice per day for Plaintiff.[2]  On November 6, 2016, Plaintiff complained of shoulder pain, but there is no indication of any treatment provided at that time or shortly after his complaints.  On November 11, 2016, Plaintiff complained that he was experiencing pain and decreased range of motion in his limbs and neck.  Consequently, Plaintiff was placed on sick call to see Dr. Cooper.

---

[2]  The Court has reviewed the related exhibit and is skeptical of the assertion that it states Plaintiff should receive naproxen twice per day.  The exhibit *appears* to state "Naproxen 500mg 1 PD."  Dkt. No. 149-1 at 5.  However, Plaintiff has admitted that the order was for twice daily medication.  Dkt. No. 172 at 3.  It is also unclear whether the medication was administered twice per day.  Defendant cites a medication administration record indicating that the medication was dispensed both in the morning and evening [Dkt. No. 149-1 at 12], but Plaintiff testified he only received evening medication (Dkt. No. 172-11 at 179:16-24).  McCullar, who supposedly administered the morning medications according to the record, could not recall providing medication to Plaintiff (Dkt. No. 172-15 at 24:16-25:9).  The Court assumes, as it must, that medication was dispensed only once per day and McCullar was not the nurse who provided it to Plaintiff.

The same day he was placed on sick call, Plaintiff participated in a video call with his brother.[3]   Plaintiff appears extremely disheveled in the video, with his orange jumpsuit unbuttoned and hanging off one shoulder.  During that call, Plaintiff is helped to his feet by a fellow inmate after he had presumably been sitting on the ground.  Plaintiff can stand and walk, though seemingly with difficulty, and he exhibits limited use of each hand.  He also complains to his brother of being in pain and having trouble getting medical treatment.

On November 14, 2016 at 11:27 a.m., Nurse McCullar arrived at Plaintiff's cell in response to Plaintiff's complaint to jail staff that he could not walk.  When she arrived, Plaintiff was sitting at a table with his head down and complained of pain, an inability to walk or otherwise move his legs, and tingling in his legs.  According to Nurse McCullar's deposition testimony, Plaintiff was not flaccid and had no outwardly obvious signs of paralysis, and she could see muscle tone as he was sitting.  Nurse McCullar contacted Dr. Cooper, who told her to place Plaintiff on the list to be seen for the upcoming week.  She also placed a records request regarding Plaintiff's hospitalization related to his motor vehicle accident.

Later that same day, at 8:10 p.m., jail staff asked Nurse Kotas to come and investigate Plaintiff's medical needs.  She found Plaintiff sitting at a table with his head down and decreased range of motion in his neck and limbs.  She also determined that Plaintiff had lost control of his urinary functions and urinated on himself and the floor.  After Plaintiff complained of his pain being ten out of ten, Nurse Kotas checked Plaintiff's vitals and found his heart rate was 116 beats per minute, his blood pressure was 139/93, and his oxygen saturation was between 84 and 90

---

[3]  The parties disagree as to how to interpret what the video shows.  The Court's description of the video reflects what is shown with minimal interpretation or assumptions.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

percent.  She called Dr. Cooper and relayed the information to him.  Dr. Cooper ordered that Plaintiff be sent to an emergency department for evaluation.

Muskogee Emergency Medical Services arrived at the Jail and took Plaintiff to the Wagoner Emergency Department.  According to Wagoner Community Hospital records, Plaintiff complained of body pain, neck pain, and weakness.  A few hours later, Plaintiff received transportation to Hillcrest Medical Center in Tulsa, Oklahoma.  On November 16, 2016, Dr. Clinton Baird performed surgery on Plaintiff after concluding that he was suffering from an epidural spinal abscess.[4]

Plaintiff claims that "substantial evidence" exists "that overcrowding at the Jail and understaffing of detention officers obstructed the Turn Key nursing staff from conducting sick call and from providing adequate care to the inmates at the Jail."  His only specific citation for this assertion is to the entirety of his broad, non-particularized, argumentative response to Defendants' particularized facts.  This response fails to controvert Defendants' evidence, including direct testimony from Dr. Cooper that there was no reason to believe Jail staff prevented Turn Key staff from providing Plaintiff with medical care.  While Plaintiff cites a March 2016 inspection showing Jail overcrowding, the Sheriff puts forth an October 2016 inspection—closer in time to the November 2016 events underlying the lawsuit—showing no violations and substantial compliance with inspection requirements.

## II.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[4] Plaintiff complains the Hillcrest Medical Center records are illegible, but the Court's review indicates that the date on the records shows Plaintiff's surgery occurred on November 16, 2016.  Dkt. No. 144-13 at 4.

movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for the trial before the find-finders.[5] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[6] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[7] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[8]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[9]

"The nonmovant's failure to properly address the movant's assertion of facts as required by Rule 56(c) permits the Court to consider the facts undisputed for purposes of the motion."[10] The moving party is entitled to summary judgment only if its motion and supporting materials—

---

[5] *Anderson v. Liberty Lobby Inc.*, 472 U.S. 242, 248 (1986).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Anderson*, 477 U.S. at 248.

[8] *Id*.

[9] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[10] *Metropolitan Life Ins. Co. v. Bradshaw*, 2020 WL 1528234, at *2 (W.D. 2020) (citing Fed. R. Civ. P. 56(e)(2)) (internal citations and alterations omitted).

including the facts deemed admitted—show that under the undisputed facts it is entitled to judgment on the claims as a matter of law.[11]

### III.   Analysis

### A.   Muskogee County Defendants

Plaintiff's Amended Complaint alleges the Board violated Article II, Sections 7 and 9 of the Oklahoma State Constitution.  The Board argues that it is immune from such claims under the Oklahoma Governmental Tort Claims Act ("GTCA").[12]  In 2018, the Supreme Court of Oklahoma held that claims for denial of medical care brought under Article II, Sections 7 and 9 of the Oklahoma State Constitution are barred by the GTCA.[13]   Plaintiff concedes that this decision bars his claim against the Board.  The Court has reviewed the cited decision and agrees that Plaintiff's claim may not proceed.  Therefore, the Court grants the Board's Motion for Summary Judgment.

The Sheriff is named a Defendant to Plaintiff's § 1983 claim in his official capacity. Official capacity suits "impose[] liability on the entity that [the individual defendant] represents."[14]   Such claims should be treated as claims against the entity.[15]   In Oklahoma, a

---

[11] *Milam v. Pafford EMS*, 729 F. App'x 632, 636 (10th Cir. 2018).

[12] 51 O.S. §§ 152(14) & 153.

[13] *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 235-39 (Okla. 2018).  *See id.,* at 236 n. 5 ("Generally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA.").  *See also Barre v. Ramsey*, 2022 WL 1322540, at *18 (N.D. Okla. 2022) (Section 7 claim not available as a free-standing claim outside the GTCA); *Plunkett v. Armor Corr. Health Servcs.*, 2022 WL 889962, at *8 (N.D. Okla. 2022) (recognizing *Barrios* precludes actions by an inmate for denial of medical care).

[14] *Couser v. Gay*, 959 F.3d 1018, 1022-23 (10th Cir. 2020) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

[15] *Sawyers v. Norton*, 962 F.3d 1270, 1278 n.4 (10th Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

-7-

county sheriff bears responsibility for jail administration and has charge of the jail.[16]   Plaintiff's claim against the Sheriff is then, in substance, a claim against the Jail.

A person who believes he or she has suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" may bring a civil action against any person who, acting under color of law, caused that deprivation.[17]   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[18]

"Persons" subject to § 1983 liability include both "municipalities and other local government units."[19]   Such local government units include counties.[20]   The Supreme Court has held that a unit of local government can be liable under § 1983 for violations of civil rights if the violation is a result of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[21]   This "official policy" requirement distinguishes the act of the local governmental unit from acts of its employees, as governmental liability cannot derive from a theory of *respondeat superior*.[22]

---

[16] 19 O.S. § 513; 57 O.S. § 47.

[17] 42 U.S.C. § 1983.

[18] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[19] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[20] *Broach v. Morris*, 2020 WL 2306637, at *6 (D. Colo. 2020). *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) ("a plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate two elements" established in *Monell*).

[21] *Id*.

[22] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

A plaintiff must establish three elements to prove governmental or municipal liability:  an official policy or custom, causation, and state of mind.[23]  A policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[24]

Deliberate indifference is defined differently regarding municipal and individual § 1983 defendants.  In the municipal context, "the municipality [must have] actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and [it must] consciously or deliberately choose[] to disregard the risk of harm."[25]  In general, notice is "established by proving the existence of a pattern of tortious conduct," but occasionally it may be proven "if a violation of federal rights is a 'highly predictable' or 'plainly obvious consequence' of a municipality's action or inaction."[26]  This is a "stringent standard of fault," as a lesser burden on a plaintiff "would result in *de facto respondeat superior* liability on municipalities."[27]

---

[23] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

[24] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (cleaned up).

[25] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

[26] *Id*. at 1307-08.

[27] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."[28]  He must show that "the municipality was the 'moving force' behind the injury alleged," meaning "the municipal action was taken with the requisite degree of culpability and [there was] a direct causal link between the municipal action and the deprivation of federal rights."[29]

Since the time the parties filed their briefs, the Tenth Circuit issued an opinion addressing "some tension in [its] caselaw" and "[d]emarcating the precise dividing line" between municipal liability and individual liability.[30]   Where "the municipality's failures are the driving force behind a constitutional violation by a specific municipal employee," a municipal liability claim "may not be maintained without a showing of a constitutional violation by the [municipal employee]."[31]  Failure to train claims exemplify this kind of situation.[32]

A different situation presents itself when a plaintiff alleges "gross deficiencies in staffing, facilities, equipment, or procedures" such that inmates are "effectively denied access to adequate medical care."[33]  The Tenth Circuit explained:

> [S]ometimes the municipal policy devolves responsibility across multiple officers. In those situations, the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the

---

[28] *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

[29] *Id.*

[30] *Crowson v. Washington Cty., Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020).

[31] *Id.* at 1186-87.

[32] *Id.* at 1187.

[33] *Id.* (quoting *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 308 (10th Cir. 1985)).

> municipality may be directly liable. That is, the municipality may not escape liability by acting through twenty hands rather than two.[34]

Thus, "even where no individual action by a single officer rises to a constitutional violation, a municipality may be held liable where the sum of its actions nonetheless violates [a] plaintiff's constitutional rights."[35]

The Tenth Circuit has distinguished distinguished "between claims against a county premised on 'systemic failure' and claims dependent upon a 'predicate violation' by an individual defendant."[36]  Plaintiff brings an argument under each theory:  (1) the Sheriff is responsible for predicate violations committed by Turn Key medical staff; and (2) the Sheriff is deliberately indifferent himself because of systemic failures within the Jail.

Before the Court can analyze Plaintiff's predicate violations argument, it must resolve the disputed issue of whether Turn Key employees are subordinates of the Sheriff for purposes of *Monell* liability.  "In Oklahoma, . . . a sheriff has a statutory duty to provide medical care to prisoners and is responsible for the proper management of the jail and the proper conduct of the jail personnel."[37]  "The Supreme Court has made clear that the provision of medical care by an independent contractor does not prevent finding a jail official liable under § 1983 . . . ."[38]  The

---

[34] *Id*. at 1191.

[35] *Id.*

[36] *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1178 (10th Cir. 2020).  *See also Bowlds v. Turn Key Health*, 2021 WL 354109, at *3 (W.D. Okla. 2021).

[37] *Estate of Crowell ex rel. Boen v. Bd. of Cty. Comm'rs of Cty. of Cleveland*, 237 P.3d 134, 144 (Okla. 2010); 57 O.S. § 52.  *See also HCA Health Servs. of Okla., Inc. v. Whetsel*, 173 P.3d 1203, 1205 (Okla. 2007) ("We deem the duty of providing medical care to prisoners to be well established by both Oklahoma statutory and federal law as well as by state jurisprudence.").

[38] *Hollis v. Davis*, 2014 WL 7184406, at *6 (N.D. Okla. 2014) (citing *West*, 487 U.S. at 56).

Court agrees with Plaintiff that Turn Key employees may be considered subordinates of the Sheriff.[39]

Speaking generally, "reasonable reliance of jail officials on the medical advice of their contract partners [is] not necessarily [] deliberate indifference."[40]   The Tenth Circuit has explained that "unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious needs," but "prison officials may rely on a medical professional's judgment *unless* the prisoner is obviously receiving inadequate care."[41]   While it is undisputed that Plaintiff's condition deteriorated during his time in the Jail, the facts before the Court does not lead it to believe the evidence before it could lead a reasonable jury to find Plaintiff's his care was *obviously inadequate*.   And as discussed *infra*, Plaintiff has not established that an individual employee of Turn Key—such as Dr. Cooper or Nurse McCullar— was deliberately indifferent to Plaintiff's medical needs, so this behavior does not provide a predicate action to which liability could attach if the Sheriff ratified their actions.   The Court does not find a predicate violation for which the Sheriff may be liable under *Monell*.

Plaintiff claims the relevant systemic failure was that the Jail was overcrowded and understaffed by detention officers such that Turn Key "was regularly unable to provide even the most basic health care services . . . to the inmates."   He argues that "because there were not enough officers to provide security, nurses could not provide medical monitoring and treatment." While there is a dispute about the amount of overcrowding or understaffing at the Jail at the time

---

[39] At the same time, the Court reiterates that municipal liability cannot derive from *respondeat superior*. *See Pembaur*, 475 U.S. 479-80.

[40] *Hollis*, 2014 WL 7184406, at *6 (citing *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 404 (10th Cir. 2009)).

[41] *Weatherford*, 347 Fed. Appx. at 404 (emphasis in original) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006)).

-12-

Plaintiff was housed there, the Court need not resolve the dispute, as the Court agrees with the Sheriff that Plaintiff has not created a genuine issue of material fact about whether the alleged overcrowding or understaffing, if it were proven, was the moving force behind any potential violation of Plaintiff's constitutional rights.

Although the exact number of times jail staff attended to Plaintiff is disputed, it was at least once a day.  The evidence supports the Sheriff's claim that, throughout these numerous visits, "nursing staff simply did not believe it was an emergency situation."  And Plaintiff admits that when Jail staff believed he was in serious condition, they immediately called Turn Key staff, who in turn called emergency medical services. Even if overcrowding and understaffing may have been *general* issues, they were not the cause of *Plaintiff's* issues.  A failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[42]  Summary judgment is appropriate on Plaintiff's claims against the Sheriff.

## B.  Turn Key Defendants

Plaintiff brings § 1983, negligence, and Oklahoma state constitutional claims against Defendant Turn Key Health Clinics, LLC.  Plaintiff also brings claims against Turn Key's agents Dr. Cooper and Nurse McCullar for depriving him of his constitutional rights.  The Court will address each in turn.

Private health care providers like Turn Key may be considered municipalities for purposes of § 1983 liability because a state is "constitutionally obligated to provide medical

---

[42] *Celotex Corp.*, 477 U.S. at 322-23.

treatment to injured inmates" and "delegation of that traditionally exclusive function to a private physician [gives] rise to a finding of state action."[43]

To the extent that Plaintiff claims Turn Key is responsible for individual violations committed by its employees—including Nurse Rosemary Kotas ("Nurse Kotas"), Nurse McCullar, and Dr. Cooper—the Court addresses his arguments *infra* and finds no predicate violation on which to base municipal liability.[44]

To the extent that Plaintiff claims Turn Key has systemic deficiencies in understaffing or similar arguments, the Court applies the same analysis as it did to claims of systemic deficiencies with the Sheriff's office.  Regardless of the general state of affairs at the Jail, Plaintiff received treatment in a timely fashion when Jail staff believed emergent care was necessary.  Without an underlying constitutional violation, Plaintiff's *Monell* claim against Turn Key fails.

The parties dispute whether Turn Key is immune from suit for negligence as a state agency under the GTCA.  The Oklahoma Supreme Court has ruled that, "generally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA."[45]   Other courts in this district have extended this reasoning "to corporate jail medical contractors and their employees, determining them to be entitled to immunity on state

---

[43] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55 (1999) (summarizing the Court's reasoning in *West*, 487 U.S. at 48).  *See also Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194, 1196-97 (10th Cir. 1988) (finding private corporation that managed hospital liable as state actor because liability ran with delegation of authority).

[44] Dr. Cooper and Nurse McCullar are named Defendants with full summary judgment briefing regarding each of them. Nurse Kotas is not a named Defendant.  Turn Key argues that Plaintiff's claims of her deliberate indifference are inappropriate because she is not joined in the suit.  Dkt. No. 136 at 14.  However, Plaintiff correctly cites Tenth Circuit authority that a "plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality."  *Burke v. Regalado*, 935 F.3d 960, 1010 (10th Cir. 2019) (quoting *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013)).  Nevertheless, as the Court explains *infra,* Plaintiff has not successfully controverted Turn Key's evidence regarding Nurse Kotas' behavior.

[45] *Barrios*, 432 P.3d at 236 n.5.

-14-

law claims pursuant to the GTCA."[46]   The Court joins with its colleagues and adopts this reasoning.  Summary judgment is proper on Plaintiff's negligence claim against Turn Key.

"Immunity under the GTCA, as amended in 2014, extends to tort suits alleging violations of rights under Oklahoma's constitution."[47]   Although not discussed in his briefing regarding Turn Key, Plaintiff appears to concede in his briefing regarding the Board that both his state constitutional claims—against the Board and against Turn Key—should be dismissed in light of the decsiion of the Oklahoma Supreme Court in *Barrios v. Haskell Cty. Pub. Facilities Auth.*[48]  Plaintiff's state constitutional claim against Turn Key fails.

With respect to Turn Key's medical staff, Plaintiff does not allege negligence or state constitutional claims His only claim against Dr. Cooper or Nurse McCullar is a constitutional tort under 42 U.S.C. § 1983.

The Supreme Court first recognized the doctrine of deliberate indifference regarding individual defendants in 1976, reasoning that severe inattention "to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[49]   The doctrine has a high bar.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner,"[50]  and "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional

---

[46] *Young v. Glanz*, 2020 WL 5937899, at *9 (N.D. Okla. 2020).  *See also, e.g., Burke v. Regalado*, 2019 WL 1371144, at *2-3 (N.D. Okla. 2019); *Prince v. Turn Key Health Clinics, LLC*, 2019 WL 238153, at *9 (N.D. Okla. 2019).

[47] *Burke*, 2019 WL 1371144 at *3.

[48] 432 P.3d 233, 241 (Okla. 2018).  *See* Dkt. No. 170 at 1 ("Unfortunately, Plaintiff must concede that the Oklahoma Supreme Court's recent decision in *Barrios* . . . appears to bar Plaintiff's claims brought under the Oklahoma Constitution." (emphasis added)).

[49] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted).

[50] *Id*. at 106.

violation."[51]   Nor do negligence or gross negligence by officials rise to the level of deliberate indifference, as "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.' "[52]   Instead, deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other."[53]

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates."[54]   To prove a claim for violations of a right to medical care, a pretrial detainee "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[55] Deliberate indifference is made up of two components: objective and subjective.[56]

"Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."[57]   "A medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[58]   However,

---

[51] *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001).

[52] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim.").

[53] *Id.* at 836.

[54] *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021).

[55] *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (quoting *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001)).

[56] *Id.* at 993 (rejecting pretrial detainee's argument that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), established a purely objective standard for pretrial detainees' claims related to medical care). *Strain* was pending before the Tenth Circuit at the time of the parties' briefing.   Its resolution precludes the objective-only standard advocated for by Plaintiff.

[57] *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).

[58] *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2008) (internal brackets omitted) (citation omitted).

when a claim is premised on a delay in medical care, such delay violates a pretrial detainee's rights only "where the [pretrial detainee] can show the delay resulted in substantial harm."[59] This requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."[60]

With respect to the subjective component, the pretrial detainee must demonstrate the official has a culpable state of mind.[61]  "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.' "[62]  Where a medical professional acts "solely . . . as a gatekeeper for other medical personnel capable of treating the condition," that professional may be liable if she "delays or refuses to fulfill that gatekeeper role."[63]

"The subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."[64]  The Court's analysis of the subjective component "is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary."[65] Neither negligent diagnosis nor treatment establish a constitutional violation,[66] and "an official's

---

[59] *Mata*, 427 F.3d at 751 (citation omitted).

[60] *Id*. (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

[61] *Id.*.

[62] *Id*. (quoting *Farmer*, 511 U.S. at 837).

[63] *Id*. (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

[64] *Self*, 439 F.3d at 1232.

[65] *Id*. at 1233 (citation omitted).

[66] *Id*. at 1230.

failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court precedent] be condemned as the infliction of punishment."[67]   "In the end, the 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.' "[68]

Nurse Kotas first saw Plaintiff on November 11, 2016.[69]   Notes from this encounter show that Plaintiff complained of decreased range of motion in his upper and lower extremities, limited range of motion in his neck, and pain.  Plaintiff claims that Nurse Kotas was deliberately indifferent at this encounter because she did not take Plaintiff's vital signs, did not call a doctor, and "did absolutely nothing to assist [Plaintiff]."  He also claims that "[i]t would have been obvious by November 11, even to a layperson, that [Plaintiff] was rapidly deteriorating and in need of emergent medical treatment . . . ."

Plaintiff fails to controvert Turn Key's evidence that the complaints he made on November 11, 2016b were the same as complaints he had made to two treating physicians in October 2016.  And the video Plaintiff cites as providing "obvious" need of emergency treatment shows that Plaintiff is able to stand and walk, though seemingly with difficulty, and use each hand in a limited fashion.  Further, Plaintiff admits that Nurse Kotas placed him on the sick call list for November 15, 2016, contradicting his own claim that she did "absolutely nothing."

---

[67] *Farmer*, 511 U.S. at 838.

[68] *Self*, 439 F.3d at 1233 (quoting *Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999)).

[69] Nurse Kotas saw Plaintiff again on November 14, 2016—she was the nurse who called Dr. Cooper and then, at his direction, emergency services. Plaintiff does not claim she was deliberately indifferent during this second encounter.

Deliberate indifference requires more than negligence or gross negligence.[70]  And "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under [Tenth Circuit] case law to satisfy the subjective component of a deliberate indifference claim."[71]  Plaintiff fails to provide a basis for a reasonable jury to find Nurse Kotas actions satisfied the subjective component of a deliberate indifference claim.  Summary judgment is warranted.

Nurse McCullar's argument in her summary judgment motion is limited to asserting that the evidence does not prove the subjective component of deliberate indifference.  The Court agrees.

The evidence does not support a conclusion that Nurse McCullar knew of and disregarded an excessive risk to Plaintiff.  As mentioned, if a medical professional's role is to "serve as a gatekeeper for other medical personnel capable of treating [a] condition," deliberate indifference may occur if the professional delays or refuses to fulfill that role by failing to relay information to the capable personnel.[72]  On the other hand, the gatekeeping role is fulfilled if the medical professional reports symptoms or otherwise relays information to a "higher-up" or more highly trained provider.[73]  Here, Nurse McCullar fulfilled her gatekeeping role by relaying to Dr. Cooper the symptoms Plaintiff complained of.  Even if she were negligent in not inquiring further of Plaintiff's symptoms, this would not be sufficient to demonstrate deliberate

---

[70] *Mata*, 427 F.3d at 751.

[71] *Self*, 439 F.3d at 1234 (explaining "[w]here a doctor faces symptoms that could suggest either indigestion or stomach cancer, and the doctor mistakenly treats indigestion, the doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable").

[72] *Sealock*, 218 F.3d at 1211.

[73] *Burke*, 935 F.3d at 993; *Mata*, 427 F.3d at 759-60.

indifference.  Summary judgment is appropriate on Plaintiff's § 1983 claim against Nurse McCullar.

The Court notes that McCullar also argues that there is inadequate evidence to show any deliberate indifference on her part caused Plaintiff's harm or that it exacerbated his injuries.  This argument is premised on the notion that, even had Plaintiff received treatment much earlier for his spinal condition, his status following treatment would be the same.  However, a deprivation of medical care is "sufficiently serious,"[74] to establish a constitutional violation where the pretrial detainee experiences "several hours of untreated pain."[75]  McCullar makes no argument that this objective element is not met; she does not address the constitutional question, but the amount of damages that should be awarded in the event she is found to have been deliberately indifferent.  The Court need not resolve that issue on a motion for summary judgment.  The only question the Court must resolve is if McCullar had subjective knowledge of the risk that Plaintiff would suffer that harm.

Likewise, summary judgment is appropriate on Plaintiff's § 1983 claim against Dr. Cooper.  The doctor could only make treatment decisions based on the information available to him, which was limited.  Again, the clarity of hindsight makes it easy to say Dr. Cooper should have inquired further of Plaintiff's self-described "neck problems" or the symptoms Nurse McCullar reported, but as mentioned, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court precedent] be condemned as the infliction of punishment."[76]  The Court agrees with Dr.

---

[74] *Self*, 439 F.3d at 1230.

[75] *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014).

[76] *Farmer*, 511 U.S. at 838.

Cooper that he made medical decisions based on the history and symptoms reported to him and did not ignore the complained-of symptoms brought to his attention. Once Dr. Cooper learned of the severe nature of Plaintiff's condition during the evening of November 14, 2016, he immediately ordered Plaintiff be taken to an emergency department. This quick action is inapposite to deliberate indifference. Plaintiff's arguments do not withstand summary judgment.

Given these conclusions, the court finds moot the subsequent in limine and other trial-related motions of the parties.

**IT IS THEREFORE ORDERED** that that the Motions for Summary Judgment filed by the Board of County Commissioners of Muskogee County (Dkt. No. 133), Muskogee County Sheriff Andy Simmons (Doc. 134), Turn Key Health Clinics, LLC (Doc. 136), Dr. William Cooper (Doc. 137), and Katie McCullar (Doc. 138) are **GRANTED;** the Motion for Sanctions of Plaintiff (Doc. 135) and the Motions to Exclude Evidence or Testimony of the various Defendants (Doc. 150, 152, 153, 154, 155, and 217) are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

This closes the present action.

Dated this 8th day of June, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE